UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------------- x
ALTON CRONIN, *et al.*,                                             :
                                                                    :
                                       Plaintiffs,                  :
                                                                    :            **MEMORANDUM &**
              -against-                                             :            **ORDER**
                                                                    :
TOWN OF MIDDLEBURY, *et al.*,                                       :            3:24-CV-2012 (VDO)
                                                                    :
                                       Defendants.                  :
-------------------------------------------------------------------- x

**VERNON D. OLIVER**, United States District Judge:

After being terminated from their jobs as police officers, Plaintiffs Alton Cronin and Randy Ireland commenced this action for alleged civil rights violations related to that termination against Defendants Town of Middlebury (the "Town"), Attorney Robert Smith and First Selectman Edward B. St. John (the "Individual Defendants"). Before the Court is Defendants' motion to dismiss all of the claims set forth against them in the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the pending motion is **granted** as to the federal claims brought under 42 U.S.C. § 1983, as those claims are time-barred. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without a decision as to their merit.

I.      **BACKGROUND**

     A.      **The Parties**

Plaintiffs Cronin and Ireland were employed as police officers at the Town of Middlebury Police Department ("MPD").[1] Cronin became a sworn MPD officer in April 2020

---

[1] Compl., ECF No. 1-1 ¶¶ 3–4.

and served as President of the Middlebury Police Union, FOP Lodge 034 (the "Union").[2] Ireland became a sworn MPD officer in July 2016 and served as Treasurer of the Union.[3] Cronin and Ireland were each responsible for advising and educating MPD officers regarding rights under a collective bargaining agreement ("CBA") between the Town and the Union, advocating on behalf of officers, and submitting grievances when necessary.[4]

The Individual Defendants, Smith and St. John, were involved in defending the Town against grievances, lawsuits, and other disputes brought by the Union.[5] St. John served as First Selectman and had responsibility over hiring and oversight of Town employees, including MPD employees.[6] Smith served as Town Attorney, with responsibilities including representing the Town in legal matters, advising on compliance, and drafting/reviewing policies and documents affecting the Town, including the last three CBAs between the Town and the Union.[7]

In September 2018, St. John requested that a civilian Town part-time tax clerk, Amy Von Culin, investigate MPD officers' time records.[8] Von Culin conducted the investigation and presented to St. John the data and her analysis, which purportedly suggested problems with multiple officers' time records.[9] Then, while working closely with the Individual

---

[2] *Id.* ¶¶ 11–12.

[3] *Id.* ¶¶ 14–15.

[4] *Id.* ¶¶ 13, 16.

[5] *Id.* ¶¶ 23–25.

[6] *Id.* ¶¶ 20–21.

[7] *Id.* ¶¶ 23–24.

[8] *Id.* ¶¶ 27–28.

[9] *Id.* ¶¶ 30–31.

Defendants, Von Culin proceeded to conduct an investigation of approximately four months into Plaintiffs, where she reviewed GPS data and video tapes and consulted with representatives of Verizon.[10] Following the conclusion of the investigation, the Individual Defendants convened a meeting in May 2019, where the attendees were advised that the investigation revealed a "failure to patrol" by Plaintiffs.[11]

On May 22, 2019, Plaintiffs received letters notifying them of a Predisciplinary (Loudermill) Conference and that they were being suspended from the Middlebury Police Department.[12] Prior to the receipt of the Predisciplinary letters, Plaintiffs were not aware that they were under investigation, and the Individual Defendants did not notify Plaintiffs of any active investigations into their time records, in violation of the CBA.[13]

On July 8, 2019, the Loudermill Hearing for Plaintiffs was held during a meeting of the Town of Middlebury Police Commission where, following this hearing, the Commission voted unanimously to terminate Plaintiffs' employment.[14] In letters dated July 29, 2019, Plaintiffs were informed of their termination from the MPD, backdated to July 8, 2019.[15]

The Union then filed grievances challenging the termination of Plaintiffs.[16] On May 31, 2024, arbitration panels from the Connecticut Labor Department's State Board of Mediation and Arbitration determined that the Town lacked 'just cause' to terminate Plaintiffs and ruled

---

[10] *Id.* ¶¶ 32–33.

[11] *Id.* ¶¶ 39–41.

[12] *Id.* ¶¶ 42, 45.

[13] *Id.* ¶¶ 35–37, 43.

[14] *Id.* ¶ 49.

[15] *Id.* ¶ 50.

[16] *Id.* ¶ 51.

that they must be reinstated to their position as police officers with the MPD.[17] Despite the explicit language of the arbitration awards, neither Cronin nor Ireland has been reinstated to their position with the MPD.[18]

### B.    State Court Proceedings

The Town filed applications in the Connecticut Superior Court to vacate the arbitration awards pursuant to Connecticut General Statutes §52-418.[19] In 2025, the trial court entered judgment for the Town and vacated the arbitration awards reinstating Plaintiffs to their position.[20] Plaintiffs, through the Union, appealed the trial court's decision to the Connecticut Appellate Court, where the case remains pending.[21]

### C.    Procedural History

Plaintiffs commenced this action on December 19, 2024.[22] The Complaint asserts the following causes of action: (1) violation of Plaintiffs' civil rights protected by the First, Fifth, and Fourteenth Amendments to the United States Constitution, brought under 42 U.S.C. §

---

[17] *Id.* ¶¶ 52–53.

[18] *Id.* ¶ 58.

[19] *Town of Middlebury v. Middlebury Police Union Loc. 034*, No. UWY-CV-24-6078479, 2025 WL 1639490, at *2 (Conn. Super. Ct. May 6, 2025); *Town of Middlebury v. Middlebury Police Union Loc. 034*, No. UWY-CV-24-6078480, 2025 WL 1639491, at *2 (Conn. Super. Ct. May 6, 2025). The Court may take judicial notice of actions and proceedings in other courts to establish the fact of such litigation and related filings. *Massie v. Wells Fargo Bank, N.A.*, 734 F. Supp.3d 196, 198 n.1 (D. Conn. 2024) (citing *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)).

[20] *Middlebury Police Union Loc. 034*, 2025 WL 1639490, at *4 (memorandum of decision vacating arbitration award as to Cronin); *Middlebury Police Union Loc. 034*, 2025 WL 1639491, at *4 (memorandum of decision vacating arbitration award as to Ireland).

[21] *Town of Middlebury v. Middlebury Police Union Loc. 034*, No. AC 48819 (Conn. App. Ct.).

[22] *See* ECF No. 1-1.

1983, (2) intentional infliction of emotional distress, and (3) tortious interference with contractual relationship.[23]

Defendants move to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[24] The motion was fully briefed on March 4, 2026.[25]

## II.    LEGAL STANDARD

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "On a motion to dismiss, all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). "To survive dismissal, the pleadings must contain 'enough facts to state a claim to relief that is plausible on its face[.]'" *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d

---

[23] *See id.*

[24] Mot. Dismiss, ECF No. 38.

[25] Resp., ECF No. 43; Reply, ECF No. 46.

147, 153 (2d Cir. 2002) (cleaned up). "[T]he court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief." *Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 83 (D. Conn. 2020).

## III.   **DISCUSSION**

### A.   **Federal Claims**

The Court finds that Plaintiffs' federal claims under Section 1983 are time-barred.

An "action may be dismissed as frivolous if a complaint is time-barred on its face under the applicable statute of limitations." *Speer v. Norwich Pub. Utils.*, No. 19-CV-2005 (JCH), 2021 WL 1978702, at *4 (D. Conn. May 18, 2021), *aff'd,* No. 21-CV-1353, 2022 WL 852968 (2d Cir. Mar. 23, 2022) (citing *Pino v. Ryan*, 49 F.3d 51, 53–54 (2d Cir. 1996)); *see also Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) ("[A]lthough the statute of limitations is ordinarily an affirmative defense that the defendant must raise . . . district courts may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted." (cleaned up)). "Claims for constitutional violations under [section] 1983 . . . are governed by a three-year statute of limitations." *Young v. Duncan*, Case No. 18-CV-857 (AWT), 2018 WL 11302943, at *2 (D. Conn. June 4, 2018) (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir. 1994)).

Because Plaintiffs commenced this lawsuit in December 2024,[26] any claim under Section 1983 that accrued before December 2021 is not actionable. "[T]he accrual of Section

---

[26] *See* ECF No. 1-1.

1983 claims is analyzed under federal common law." *Spak v. Phillips*, 857 F.3d 458, 462 (2d Cir. 2017). "The statute of limitations 'accrues' (*i.e.*, begins to run) on the date when 'the plaintiff knows or has reason to know of the injury which is the basis of his [or her] action.'" *Miller v. Bridgeport Police Dep't*, Case No. 14-CV-689 (JAM), 2016 WL 3086402, at *4 (D. Conn. May 31, 2016) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)); *see also Hogan v. Fisher*, 738 F.3d 509, 518 (2d Cir. 2013) ("[A]ccrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action."). Here, Plaintiffs allege that, in letters dated July 29, 2019, they were informed of their termination from the MPD, back dated to July 8, 2019.[27] Because the only reasonable inference here is that Plaintiffs had knowledge of their termination in July 2019, claims arising out of the alleged misconduct leading up to that termination accrued over five years prior to commencement of this action in December 2024. The claims brought under Section 1983 are therefore time-barred unless the limitations period is tolled. As discussed below, the Court rejects Plaintiffs' arguments that the otherwise time-barred events are actionable.

First, Plaintiffs' argument that their Section 1983 claims were not ripe until the arbitration decisions were rendered in 2024 is unavailing.[28] The Supreme Court has held that "[t]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 (1980).  A situation similar to this case was confronted by the Second Circuit Court of Appeals in *Ikedilo v. Statter*, where the Second Circuit affirmed the district court's

---

[27] *Id.* ¶ 50.

[28] ECF No. 43 at 14.

dismissal at the pleadings stage of discrimination claims arising from a termination. No. 23-7947, 2025 WL 1011346, at *2 (2d Cir. Apr. 2, 2025) (summary order). In applying *Ricks*, the Second Circuit concluded that the claims accrued *prior* to the resolution of an appeal when that appeal offered a remedy for a prior decision to terminate, as opposed to an opportunity to influence the decision to terminate before it is made. *Id*. The situation alleged here fits squarely within these authorities because, much like *Ikedilo*, the arbitration proceedings initiated by Plaintiffs were not an opportunity to influence the decision to terminate their employment before it was made.

Nor does the record affirmatively show that the statute of limitations is tolled by Connecticut's continuing course of conduct doctrine. "Under Connecticut's continuing course of conduct doctrine, 'when the wrong sued upon consists of a continuing course of conduct,' the relevant statute of limitations or repose "does not begin to run until that course of conduct is completed." *McDonald v. Derry*, No. 24-CV-1859 (KAD), 2026 WL 810752, at *4 (D. Conn. Mar. 24, 2026) (quoting *Khan v. Yale Univ.*, 85 F.4th 86, 100 (2d Cir. 2023)). To support tolling under the continuing course of conduct doctrine, "a plaintiff must allege that the defendant, (1) committed an initial wrong upon the plaintiff; (2) owed a continuing duty to the plaintiff that was related to the alleged original wrong; and (3) continually breached that duty." *Khan*, 85 F.4th at 100 (cleaned up). The attempt to invoke the continuing course of conduct doctrine hinges on Defendants disobeying the arbitration awards by failing to reinstate Plaintiffs to their position as police officers with the MPD.

But those arbitration awards were vacated by a state court judge for violating public policy. Connecticut's statutory scheme provides for judicial proceedings to confirm or vacate arbitration awards. Section 52-417 of the Connecticut General Statutes enables a party to apply

8

for an order confirming an arbitration award and, "[o]nce confirmed by a court, an arbitration award has the force and effect of a judgment." *Brass City Loc., CACP v. City of Waterbury*, 254 A.3d 866, 872, 872 n.10 (Conn. 2020). Section 52-418, in turn, enables a party to apply for an order vacating an arbitration award, including on the ground that the award violates public policy. *State v. Conn. State Univ. Org. of Admin. Fac., AFSCME, Council 4, Loc. 2836, AFL-CIO*, 314 A.3d 971, 982 (Conn. 2024) ("A challenge that an award is in contravention of public policy is premised on the fact that the parties cannot expect an arbitration award approving conduct which is illegal or contrary to public policy to receive judicial endorsement any more than parties can expect a court to enforce such a contract between them.").

Here, the Town exercised its statutory right to appeal the arbitration awards by moving to vacate in Connecticut Superior Court. Because the state trial court found the arbitration awards to be unenforceable for violating public policy, Plaintiffs cannot support the claim that Defendants either owed a continuing duty to Plaintiffs or continually breached that duty by failing to reinstate Plaintiffs because those awards never had the force of a judgment. *Int'l Ass'n of EMTs & Paramedics, Loc. R1-701 v. Bristol Hosp. EMS, LLC*, 304 A.3d 170, 179 (Conn. App. Ct. 2023) ("Prior to confirmation, enforcement of an arbitration award relies solely on the parties' voluntary compliance." (cleaned up)). Indeed, Plaintiffs have not alleged that they filed an application, much less successfully, to confirm the arbitration awards.

Finally, the Court finds no basis to equitably toll the limitations period in this action. "[E]quitable tolling is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli–Edelglass v. N.Y.C. Transit Auth.,* 333 F.3d 74, 80 (2d Cir. 2003) (cleaned up). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing

9

his rights diligently, and (2) that some extraordinary circumstance stood in his way." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011) (cleaned up). "Because statutes of limitations protect important social interests in certainty, accuracy, and repose, equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances." *Id.*

Here, the Court finds that there are no allegations to plausibly show that Plaintiffs were reasonably diligent in pursuing their claims after receiving notice of the arbitration awards. *Baldayaque v. United States*, 338 F.3d 145, 153 (2d Cir. 2003) (explaining that parties attempting to invoke equitable tolling must show that they acted "as diligently as reasonably could have been expected under the circumstances"). Binding arbitration awards ordering reinstatement were issued on May 31, 2024, and yet Plaintiffs did not commence this action until nearly seven months later, on December 19, 2024. Because nearly seven months have passed between the arbitration decision and the commencement of this action, and Plaintiffs have provided no explanation to explain that passage of time, the Court finds that Plaintiffs were not reasonably diligent. *See Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005) (finding that a party has not established diligence where he waited for years to file his postconviction petition in state court and then waited five more months after his state petition was rejected before deciding to seek relief in federal court); s*ee also Catone v. Brink*, 488 F. Supp. 2d 214, 218 (N.D.N.Y. 2007) (finding a failure to act with reasonable diligence where a plaintiff waited more than 230 days to file a charge). Regardless, Plaintiffs have failed to plead that extraordinary circumstances stood in the way of Plaintiffs' timely assertion of their rights. *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) ("When a plaintiff relies on a theory of equitable estoppel to save a claim that otherwise appears untimely on its face, the plaintiff

10

must specifically plead facts that make entitlement to estoppel plausible (not merely possible)."); *see also A.Q.C. ex rel. Castillo*, 656 F.3d at 145 (finding equitable tolling is not warranted where the record shows no "extraordinary obstacle" that prevented a plaintiff from filing suit in a timely way).  While Plaintiffs allege that the Individual Defendants violated the CBA by failing to notify Plaintiffs of any active investigations into their time records, that does not plausibly show that those defendants prevented Plaintiffs from filing their complaint after they had notice of their termination.[29]

As such, Plaintiffs' federal claims are time-barred by the statute of limitations and must be dismissed.

### B.    Supplemental Jurisdiction

Having dismissed Plaintiffs' federal law claims, the Court declines to exercise supplemental jurisdiction over the remaining state law causes of action, including the intentional infliction of emotional distress and tortious interference with contract relationship claims. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## IV.    CONCLUSION

For the reasons described above, Defendants' motion to dismiss is **granted** and all federal claims are dismissed under Federal Rule of Civil Procedure 12(b)(6). Considering the possibility that Plaintiffs could obtain a favorable result in the ongoing state proceedings related to the arbitration awards, the Court will exercise its discretion to dismiss the claims

---

[29] *Id.* ¶¶ 35–37, 43.

**without prejudice**. *See In re Seganti*, 153 F.4th 272, 280 (2d Cir. 2025) (explaining that a district court may deviate from the general rule that a dismissal for failure to state a claim will be with prejudice). Given its declination of supplemental jurisdiction over the state law claims, the Court expresses no view as to the merits of those claims.

In light of the Court's analysis of the relevant limitations period, the Court concludes that it would be futile to allow Plaintiffs opportunity to amend while the arbitration awards remain vacated by the state court. Accordingly, leave to amend is **denied**.

The Clerk is respectfully directed to enter judgment and to close the case.

**SO ORDERED.**

Hartford, Connecticut
June 30, 2026

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge

12